UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HERBERT MCNEIL,

      Petitioner,

v.                                 Case No. 3:19cv4778-MCR-HTC

KATHLEEN H. SAWYER,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Herbert McNeil, a federal prisoner proceeding *pro se* and *in forma pauperis*, initiated this case on November 6, 2019, with an emergency petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking an order vacating a disciplinary finding against him and restoring the 191 days of good conduct time which were vacated because of that negative disciplinary finding.  ECF Doc. 1 (received and filed by the Court on November 13, 2019).  *Id.*  The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).

Because McNeil claimed he would have been due for release on November 25, 2019 except for the disciplinary finding, the Court expedited consideration of the petition.  Thus, the Court ordered Respondent to show cause, by November 27, 2019, why the petition should not be granted.  ECF Docs. 3 & 6.  Respondent responded

on November 27, 2019, with exhibits.  ECF Doc. 9.  McNeil was ordered to reply, and he did so in ECF Doc. 20, which the Court received and filed on December 23, 2019.[1]  For the reasons set forth below, the undersigned recommends the petition be **DENIED** without an evidentiary hearing because the record clearly shows that McNeil received all the process that was due and that the disciplinary finding was supported by sufficient evidence.

## I.    BACKGROUND

McNeil, a federal prisoner nearing release, was participating in a residential reentry center ("RRC") program at the time of the events in his petition.  During his time at the RRC, McNeil has been the subject of three disciplinary actions, two arising out of incidents occurring in June 2019, and one arising from an incident occurring in September 2019.  The September 2019 incident, identified by Incident Report #3316997, resulted in a disciplinary action of loss of good conduct time credit of 191 days and is the reason McNeil was not released on his presumptive release date of November 25, 2019.  Although McNeil seeks this Court's review of only the October 2019 disciplinary action, because both parties reference the other incident

---

[1] McNeil dated the reply "12/12/19", *Id.* at 8, but no time/date stamp was supplied by prison mailing officials.  McNeil also filed a second reply on December 26, 2019, (ECF Doc. 23), which contained the same arguments as his initial reply.  Additionally, on the same date, McNeil filed a "memorandum" in which he states that he was unaware he was required to send his initial reply (ECF Doc. 20) to the Respondent and stated that he did not do so.  The second reply (ECF Doc. 23), however, does appear to have been sent to the Respondent.

reports and disciplinary actions in their arguments, this Background will do so as well.[2]

### A. The June 25, 2019 Disciplinary Action.

According to the documents submitted by the Respondent for Incident Report #3268577, RRC Director Bridgette Bridgeforth conducted a pat-down search of McNeil after observing him walking out of a male restroom stumbling from side to side and reeking of a suspicious cigarette order. She also noted that his speech was slurred, and his eyes were blood shot. The pat down search revealed a couple of self-rolled tobacco paper sheets. McNeil admitted to smoking a cigarette in the bathroom but denied using drugs.

On June 13, 2019, McNeil participated in the Center Disciplinary Committee ("CDC") hearing on this incident report, waived staff assistance, and admitted to smoking tobacco but not narcotics. *Id.* at 9. The incident was investigated by Daniel Engstrom, who gave McNeil his rights. ECF Doc. 9-2 at 4. The CDC, chaired by Melissa Taubodo, determined that McNeil was guilty of using drugs and smoking. ECF Doc. 9-2 at 12. Disciplinary Hearing Officer ("DHO") Anita Cano reviewed the CDC's decision and disagreed, finding a lack of evidence to support the CDC's

---

[2] The Incident Reports and the documentation resulting from it are provided by Respondents as Attachments to the Declaration of James D. Crook, a Bureau of Prisons employee with knowledge of the records related to McNeil's claim. ECF Doc. 9-1 to 9-4.

decision regarding McNeil's use of drugs.  Nonetheless, McNeil lost 44 days of good conduct time for smoking where prohibited.

### B. The July 2, 2019 Disciplinary Action.

According to Incident Report #3272315, McNeil "provided a urine sample for random drug surveillance testing" on June 4, 2019 (the same date of the first incident).  ECF Doc. 9-3 at 2.  McNeil signed the chain of custody form indicating the urine sample was his, and it was sent for testing.  On June 15, 2019, (two days after the hearing on the first incident report) staff at the RRC received a fax from the laboratory indicating a positive result for synthetic cannabinoids in the urine sample. *Id.* at 6.  On June 21, 2019, Engstrom informed McNeil of the charges against him and McNeil waived his right to written notice 24 hours prior to the charges.  A hearing was held before the CDC on June 21, 2019, with Taubodo as chair.  *Id.* at 14.

The CDC recommended a finding of guilty based on the incident report and lab results (which were not available at the time of the first CDC hearing).  *Id.*  DHO Cano reviewed the CDC's recommendation and agreed with the finding based on the reporting officer's statement on June 4, 2019 that McNeil had provided a urine sample; McNeil's signature on the chain of custody form indicating the specimen was his and sealed in his presence; and the staff receiving notice from Redwood

Toxicology Laboratory that McNeil's urine tested positive for Synthetic Cannabinoids. *Id.* at 15. McNeil lost 41 days of lost good time credit.

### C. The October 23, 2019 Disciplinary Action.

According to Incident Report #3316997, filed on September 24, 2019, on September 5, 2019, Cheree House collected a urine sample from McNeil "for random drug surveillance testing." ECF Doc. 9-4 at 2. McNeil signed a chain of custody form confirming the sample was his, and the sample was sent to Redwood Toxicology Laboratories for testing. *Id.* at 5. A report from Redwood Toxicology Laboratory shows that the sample was "received" on September 8, 2019 and "reported" on September 9, 2019. *Id.* at 6.

On September 24, 2019, staff received an email from Redwood Toxicology Laboratories stating that McNeil's test showed a positive result for synthetic cannabinoids. *Id.* at 2. The incident report also stated that McNeil's medical records showed no medication that could have caused a false positive result for synthetic cannabinoids. The incident report was dated September 24, 2019 and signed by Cheree House. *Id.*

On September 26, 2019, Engstrom gave McNeil written notice of the charges. ECF Doc. 9-4 at 13. On October 9, McNeil was told by Bianca Shirley about the rights he could assert at the hearing. *Id.* McNeil, however, refused to sign a written acknowledgment of his rights. ECF Doc. 9-4 at 10. Shirley and staff member,

Evelyn Webber, saw McNeil and advised him of his right to appear at the hearing, but McNeil declined to appear and refused to sign a written Wavier of Appearance. ECF Doc. 9-4 at 11. The CDC held a hearing on October 9, 2019. *Id.* at 3, 11 & 13. Bridgeforth was the CDC Chairperson.

The CDC found McNeil guilty of using drugs based on the incident report. *Id.* at 14. On October 23, 2019, DHO Cano reviewed the CDC's findings and concluded that evidence was sufficient to support the CDC's decision. Specifically, the CDC considered the reporting officer's statement on September 5, 2019, that McNeil provided a urine sample; McNeil's signature on the chain of custody form indicating the specimen was his and sealed in his presence; the staff having received notice from Redwood Toxicology Laboratory indicating McNeil's urine tested positive for Synthetic Cannabinoids; and the fact that McNeil was not prescribed any medication which would cause a positive result for Synthetic Cannabinoids. Cano also noted that McNeil has a history of possessing drugs and alcohol as documented by his discipline record. McNeil lost 191 days of good conduct time.

Despite being advised on the CDC's forms that he had a right to appeal the DHO's decision, McNeil admits that he did not appeal the DHO's decision within 20 calendar days. Instead, he filed the instant federal petition.

## II.    THE PETITION

Despite the information contained in the documentation submitted by Respondent, McNeil offers a different version of events.  McNeil claims that on September 5, 2019, Bridgeforth ordered four inmates to submit urine samples, including McNeil, because one of her staff members –Murphy -- smelled smoke in the restroom of the RRC.  ECF Doc. 1 at 4.  The four inmates were also placed on restricted status.  *Id.*

McNeil claims the laboratory reported the results of the testing back to Bridgeforth on September 9, 2019.  He claims Bridgeforth told him on September 10, 2019 that the results came back negative or "clean" because they had tested for the wrong substance.  *Id.* at 5.  She then got the laboratory to re-conduct the test.  He also claims that between the 16th and 24th of September, Bridgeforth advised staff members that McNeil was cleared to get off all restrictions and allowed to seek jobs.  On September 24, 2019, however, Bridgeforth told McNeil she was going to lock him up because his "urine was dirty on/for the 5th day of September 2019."  Bridgeforth then had McNeil locked up in the Santa Rosa County Jail on September 26, 2019.  McNeil further claims that the laboratory results, showing a positive urine test, were forged.  McNeil offers no evidence to support these allegations and his rebuttal, wherein he makes these allegations, is not executed under penalty of perjury.

He also claims that the CDC hearing on October 9, 2019 took place at the Santa Rosa County Jail and included Webber, Shirley and Bridgeforth, with Bridgeforth as chairperson. ECF Doc. 1 at 7. When McNeil claimed he had not been told what he was charged with and that he needed staff assistance, Bridgeforth abruptly got up and said, "I do not have time for this" and walked out. *Id.* Thus, he appears to claim that he did not refuse to participate; instead, it was Bridgeforth who terminated the hearing after McNeil asked for staff assistance.

Thus, McNeil argues he was wrongly found guilty of Incident Report #3316997 and wrongly deprived of good conduct time credit because (1) the evidence supporting the finding of guilt – a urinalysis report showing that synthetic cannabinoids were detected in McNeil's urine – was forged by the RRC Director, Bridgeforth or laboratory workers; (2) the prison hearing board was not sufficiently impartial because it was run by Bridgeforth, who was also the main investigator, and (3) the hearing did not provide due process because Bridgeforth terminated the hearing shortly after it began because McNeil asked for staff assistance.

## III.   ANALYSIS

For the reasons set forth below, the undersigned finds that McNeil's petition should be denied because (1) he failed to exhaust available administrative remedies and (2) he is not entitled to relief on the merits.

### A. McNeil's Petition Should Be Denied Because He Failed to Exhaust Administrative Remedies.

A petitioner seeking relief under 28 U.S.C. § 2241 must exhaust available administrative remedies before he can obtain relief in federal court. *Santiago–Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). To properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (addressing the exhaustion requirement in the Prison Litigation Reform Act). When a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the court should dismiss the petition. *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 563 (11th Cir. 2016).

The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, under which an inmate can "seek formal review of an issue relating to any aspect of" his confinement. 28 C.F.R. § 542.10(a). An appeal of a DHO's decision "shall be submitted initially to the Regional Director for the region where the inmate is currently located." *Id.* § 542.14(d)(2). An inmate must submit his appeal to the appropriate Regional Director "within 20 calendar days" of the date that the formal administrative decision was signed. *Id.* § 542.15(a). If unsatisfied with the Regional Director's resolution, the inmate may submit an appeal to the General Counsel within thirty (30) calendar days of the date on which the Regional Director signed the response. *Id.* Time limits may be extended, however, when the

inmate demonstrates a valid reason for the delay. *Id.* Valid reasons include an extended period during which an inmate was in transit or was physically incapable of preparing the appeal. *Id.* §§ 542.15(a), 542.14(b). Appeal to the General Counsel is the final administrative appeal. *Id.* § 542.15(a). *See, generally, Davis*, 661 F. App'x at 562.

The CDC report, dated October 23, 2019, specifically informed McNeil he had the right to appeal the DHO's decision "under the Administrative Remedy Procedure or by letter" to the Regional Director within twenty (20) days. ECF Doc. 9-4 at 14. McNeil admits he did not appeal the DHO's decision. Nonetheless, he argues that this failure should not prevent him from proceeding here because (1) he was not provided the forms necessary to file an appeal and (2) given his release date, and the lack of response on his appeals of the June and July decisions, an appeal of the October 2019 decision would have been futile.

The undersigned has considered these arguments and find that neither are supported by the record or relevant law.

1. Failure to get necessary forms.

In his petition, McNeil argues "he was not given any B.O.P. Administrative Remedy Forms – BP (10) Tens or Form BP (11) Elevens . . . when he requested them from the FBOP staff" and that these forms are necessary to file an appeal. ECF Doc. 1 at 8. As Respondent points out, however, McNeil could have appealed to the

Regional Director with a letter; the form was not required.  ECF Doc. 9 at 4.  Thus, the lack of the necessary form does not render his administrative remedies unavailable.  Notably, McNeil does not address the ability to file a letter in his replies.

    2.  <u>Futility</u>.

McNeil argues all three incident reports involved "really the same incident" and that he filed appeals (BP 10s) concerning the first two, but has not received a response.  ECF Doc. 20 at 1-2.  He argues, given the lack of a response and that he would not be able to exhaust his administrative remedies before his release date of November 25, 2019, an appeal would have been futile.  Thus, according to McNeil, a federal habeas petition was "the proper vehicle to argue a disciplinary hearing of guilt proceeding when it's an emergency prompting a deadline which is my release date."  *Id.* at 2.

As an initial matter, the Eleventh Circuit has held that there is no futility exception applicable to the exhaustion requirement in a § 2241 case.  *See McGee v. Warden, FDC Miami*, 487 F. App'x 516, 518 (11th Cir. 2012) (rejecting argument that futility exception applicable to exhaustion prior to bringing a § 2254 petition is applicable to exhaustion requirement for a § 2241 petition).

In *Gonzalez v. United States*, the Eleventh Circuit affirmed a denial of a prisoner's petition for habeas relief under 2241 for failure to exhaust, despite the

prisoner's argument that his presumptive release date had passed. Although the holding in that case, that exhaustion is jurisdictional, has since been abrogated, *Gonzalez* remains relevant because exhaustion remains mandatory.[3] *See Davis*, 661 F. App'x at 526 ("the exhaustion requirement is still a requirement; it's just not a jurisdictional one"), citing *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). Similarly, in *Warden, FCC Coleman Low*, 359 F. App'x 88 (11th Cir. 2009), the Eleventh Circuit held that futility does not apply to exhaustion because it is mandatory and stated, "exhaustion is required even if the relief does not appear to be plain, speedy, and effective, before filing in federal court." *See id.* at 90-91, quoting *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (internal quotations omitted); *see also, Williams v. O'Brien*, 792 F.2d 986 (10th Cir. 1986) ("appellant admitted he commenced this action without complying with [the BOP's administrative] procedure. He has no alternative but to comply.").

Regardless, McNeil has not shown that an appeal would have been futile here. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court. This has the potential to reduce the number of inmate suits and also to improve the quality

---

[3] A prisoner seeking relief under § 2241 was previously required to exhaust his administrative remedies as a jurisdictional prerequisite to suit. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam). In *Santiago–Lugo*, however, the Eleventh Circuit in 2015 held that the administrative-exhaustion requirement was judge-made, rather than jurisdictional. *Santiago–Lugo*, 785 F.3d at 474–75.

of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). Indeed, compliance with BOP procedures helps ensure that, prior to judicial review, the BOP takes a coherent, definitive position on the merits of a petitioner's complaint. *Cf. Von Hoffburg v. Alexander,* 615 F.2d 633, 639 (5th Cir. 1980) (explaining that if the outcome of administrative proceedings is adverse to the plaintiff, "the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest administrative body" in an entity's internal appellate system). *Hicks v. Jordan*, 165 F. App'x 797, 799 (11th Cir. 2006).

By failing to appeal to the Regional Director, McNeil deprived the BOP of the chance to conduct an investigation into his complaints of errors or address the alleged errors prior to suit.  Moreover, McNeil has offered nothing to support his futility argument other than his own summation that an appeal would have been futile.  *See Mackey v. Ward,* 128 F. App'x 676, 677 (10th Cir. 2005) ("conclusory allegations that pursuit of administrative remedies would be futile ... are insufficient to excuse [a] failure to exhaust").  The fact that McNeil had an impending release date does not mean that a decision on his appeal could not have been made prior to his new release date.  Additionally, McNeil cannot show irreparable harm by any delay caused by having to pursue administrative remedies, where, as here, his claim

of a denial of due process (as discussed below) is without merit. *See Castano v. Everhart*, 235 F. App'x 206, 208 (5th Cir. 2007) (finding prisoner failed to meet his burden of showing exhaustion was futile).

Also, McNeil included a page in his petition with the caption "Appeal for Administrative Remedy" addressed "Attention Office of the Regional Director." *Id.* at 9. However, McNeil does not allege anywhere that he sent that page to the Regional Director within twenty (20) days. The inclusion of this page, thus, is insufficient to show that he has exhausted his administrative remedies as to the subject incident report.

**B.    McNeil's Petition Should Also Be Denied On The Merits.**

As an additional matter, even had McNeil exhausted his administrative remedies, his petition would still be subject to dismissal on the merits.

1.    McNeil received all the process that is due in a prison disciplinary proceeding.

A federal prisoner has a liberty interest (in this case, created by federal law) in his earned good conduct time ("GCT") and, accordingly, must receive due process before those credits are revoked in a prison disciplinary proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (same as to state prisoner deprived of state-created liberty interest in gain time). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does

not apply." *Wolff*, 418 U.S. at 556.  Instead, the Court established the following minimum procedural requirements due a prisoner before her GTC credits are revoked: (1) at least 24 hours' notice of the charges so the prisoner can prepare for the hearing; (2) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken; and (3) the qualified right to call witnesses and present documentary evidence, if not "unduly hazardous to institutional safety or correctional goals."  *Wolff*, 418 U.S. at 563-66.

A review of the evidence shows that McNeil was afforded the requisite due process.  First, McNeil received written notice of the charges on September 26 – by receiving a copy of the Incident Report -- such that he could prepare for the hearing which was on October 9.  The Incident Report spelled out the date the urine sample was tested, the way the sample was secured, the testing that was done, the result of the test, and how that result was used to charge McNeil with violating code 112 (use of drugs or alcohol).  ECF Doc. 9-4 at 2.  Despite his alleged protestations to Bridgeforth at the CDC hearing that "I do not understand any of this process or charges against me", ECF Doc. 1 at 7, the September 24 incident report was clear as to the nature of the charges.  Also, this was at least McNeil's third incident report involving code 112; thus, it is hard to believe he did not understand the process.

Second, both the CDC and the DHO set out the basis of the findings against McNeil in writing during all three of his disciplinary actions, including the one

complained of in the petition, Incident Report # 3316997. *See* ECF Doc. 9-4 at 14-15.

Third, McNeil was told of the rights he could assert in the hearing on October 9, 2019 by Bianca Shirley. *Id.* These included the right (1) to have a written copy of the charges; (2) to have staff assistance during the hearing; (3) to call witnesses and present documentary evidence; (4) to be present during the hearing; (5) to be informed in writing of the decision and the reasons therefor; and (6) to contest the decision under administrative remedy procedures or by letter to the regional director within 20 days. *Id.* at 10. The documented evidence shows that McNeil was aware of these rights but simply refused to participate in the CDC hearing and assert those rights. Therefore, McNeil was provided all the procedural protections required by *Wolff* and its progeny.

> 2.   The findings of the prison disciplinary board are supported by "some evidence" in the record.

In *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985), the Court addressed the quantum of evidence necessary to support a disciplinary hearing officer's decision and held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* at 454. The Supreme Court further explained that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment

of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455; *see also Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994) (observing that the federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing," rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination").

More than just "some evidence" exists in the record here to support the DHO's determination. First, the record contains the chain of custody certification signed by McNeil, showing that the sample was indeed McNeil's. Second, the lab report indicates that the sample tested positive for Synthetic Cannabinoids. Third, the Incident Report signed by Cheree House on September 24, 2019 provides evidence of how the report was requested, secured, sent and reported. Fourth, the DHO stated that McNeil's disciplinary record evidenced a history of drug and alcohol abuse and noted McNeil's prior admission that he had "a drug problem." ECF Doc. 9-4 at 15. Clearly, there was "some evidence" supporting the determination of guilt by the DHO.

3.    The CDC and DHO that heard McNeil's case were sufficiently impartial.

McNeil claims Bridgeforth ordered the urinalysis tests, sanctioned the restrictions and was chairperson of the CDC; thus, she was "author of D.R. #3316997, the judge, and the jury" in his case.  *Id.* at 7 (punctuation cleaned up). Moreover, in his reply, McNeil alleges that "Ms. Bridgeforth, the Director of the RRC clearly violated policy and also violated my rights intentionally malicious[ly] by forging documents. . . ."  ECF Doc. 20.  He thus argues she was biased against him.

"[A] prison hearing board must be 'sufficiently impartial to satisfy the Due Process Clause.'"  *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1350 (11th Cir. 2016) (quoting *Wolff*, 418 U.S. at 571); *see also Edwards v. Balisok*, 520 U.S. 641, 647-48 (1997) (holding that if established, a prisoner's allegation of deceit and bias by the hearing officer at his disciplinary proceeding "would necessarily imply the invalidity of the deprivation of his good-time credits").  The Court in *Wolff* approved a disciplinary process as sufficiently impartial where it provided for investigation and an initial interview with the inmate by a staff member, followed by a hearing before a committee comprised of other prison officials who were not part of the investigation.  *Wolff*, 418 U.S. at 571.

McNeil's claims regarding Bridgeforth's bias are not supported by the record. The documents dispute his claim that Bridgeforth ordered the testing.  Instead, the

documents show the testing on September 5th was part of "random drug surveillance testing" and was initiated by Cheree House. Also, as set forth above, the September 24th Incident Report shows that it was authored by House (and not by Bridgeforth).

McNeil also claims that Bridgeforth received the lab report on September 9, 2019 and had the test re-performed the next day. He provides no factual support for this other than his own statement. The documentation states that "[o]n September 24, 2019, staff received notice from Redwood Toxicology Laboratory indicating your urine tested positive for Synthetic Cannabinoids." ECF Doc. 9-4 at 15.

Next, McNeil alleges Bridgeforth terminated the hearing; he did not refuse to participate. ECF Doc. 1 at 7-8. In contrast, the documentation shows, in several places, that McNeil refused to participate after being told the charges against him and his rights at the hearing. ECF Doc. 9-4 at 3, 11 & 13. Moreover, staff members Shirley and Webber met with McNeil and confirmed he waived his appearance at the hearing and refused to sign the written waiver .

Finally, McNeil alleges Bridgeforth was "judge" and "jury" over his case. However, the documentation shows that (1) Cheree House collected the urine sample on September 5; (2) Redwood Laboratory performed the urine testing; (3) House authored the incident report on September 24; (4) Daniel Ergstrom gave the written notice of the charges; (5) Briana Shirley explained McNeil's rights to him; and (6) Anita Cano was the final decisionmaker as the DHO.

Based on the above, the undersigned finds that McNeil received the procedural protections provided by *Wolff* and that "some evidence" exists which supports the hearing officer's determination. Thus, the undersigned recommends that McNeil's petition be dismissed.

## C.    Evidentiary hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id.* at 474.

## D.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

Case No. 3:19cv4778-MCR-HTC

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## III.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.    That the petition under 28 U.S.C. § 2241, ECF Doc. 1, be DENIED WITH PREJUDICE without an evidentiary hearing.

2.    That a certificate of appealability be denied.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 2nd day of January, 2020.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 3:19cv4778-MCR-HTC

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.